**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2098

TERESA M. SPEAKS; TOBY SPEAKS; STANLEY SMITH; EDDIE BROWN; ROBERT POINDEXTER; MIKE MITCHELL; ROY L. COOK; ALEX SHUGART; H. RANDLE WOOD; ROBIN ROGERS; DANIEL LEE NELSON,

Plaintiffs - Appellants,

v.

U.S. TOBACCO COOPERATIVE, INC., f/k/a Flue-Cured Tobacco Cooperative Stabilization Corporation,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, District Judge. (5:12-cv-00729-D)

Argued: March 10, 2022                    Decided: April 19, 2022

Before GREGORY, Chief Judge, and THACKER and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

**ARGUED:** Gary K. Shipman, SHIPMAN & WRIGHT, LLP, Wilmington, North Carolina, for Appellants. Lee Michael Whitman, WYRICK ROBBINS YATES & PONTON LLP, Raleigh, North Carolina, for Appellee. **ON BRIEF:** William G. Wright, Sr., SHIPMAN & WRIGHT, LLP, Wilmington, North Carolina, for Appellants. Benjamin N. Thompson, Paul J. Puryear, Jr., WYRICK ROBBINS YATES & PONTON LLP, Raleigh, North Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

The U.S. Tobacco Cooperative and its members have been embroiled in litigation for over a decade. This appeal is their second trip to the Fourth Circuit. Previously, we reversed a class settlement and remanded the case for further proceedings. *Sharp Farms v. Speaks*, 917 F.3d 276 (4th Cir. 2019). The members then amended their complaint and now seek judicial dissolution of the Cooperative. They claim dissolution is necessary because, due to a variety of market forces facing the tobacco industry, the Cooperative is no longer able to carry out its purposes. The district court dismissed the amended complaint, holding that the ground for dissolution the members asserted—failure to carry out the Cooperative's purposes—did not apply as a matter of law. For the reasons that follow, we affirm.

I.

The U.S. Tobacco Cooperative is an agricultural cooperative of flue-cured tobacco farmers in North Carolina. Our dispute involves the Cooperative's "administ[ration of] a federal price-support program designed to stabilize tobacco prices for member growers through purchasing their unsold tobacco at a guaranteed minimum price and marketing the tobacco to buyers." *Id.* at 280. Congress later ended the price-support program. But the Cooperative accumulated and still maintains millions of dollars in reserves obtained from member fees and from sales of tobacco delivered by members.

Certain members of the Cooperative seek dissolution of the Cooperative and distribution of its reserves. They claim that "the Cooperative is no longer fulfilling the

2

mandates under which it was created" and "is no longer able to carry out its purpose." J.A. 153. The members do not blame the Cooperative for this situation. Instead, they allege a host of economic challenges facing the United States flue-cured tobacco industry and the related farmers. Among those challenges are lower demand, federal and state regulations, public health incentives against smoking, international market dynamics and market substitutes such as e-cigarettes. According to the members, the Cooperative simply cannot keep up with market realities. Thus, they request judicial dissolution of the Cooperative, including the possibility of seeking declaratory judgment that would have such effect.

The Cooperative moved to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Cooperative argued that the ground for which the members seek dissolution—that the Cooperative can no longer carry out its purpose—only applies to dissolution under North Carolina's Nonprofit Corporation Act ("Nonprofit Corporation Act"). According to the Cooperative, however, the Cooperative's dissolution is governed by the North Carolina Business Corporation Act ("Business Corporation Act") which does not provide for dissolution for failure to carry out an entity's purpose. Thus, the key issue underlying the Cooperative's motion to dismiss was whether the Business Corporation Act or the Nonprofit Corporation Act applied to the Cooperative's dissolution.

In granting the Cooperative's motion, the district court held that the Business Corporation Act applied. It reached this decision by interpreting North Carolina General Statute § 54-142, a provision of North Carolina's Cooperative Marketing Act ("Marketing Act") under which the Cooperative was formed. That section generally provides that the

3

Business Corporation Act shall apply to cooperatives "with capital stock." *See* N.C. Gen. Stat. § 54-142. The district court further noted that the Marketing Act also states: "the North Carolina Nonprofit Corporation Act applies to a 'cooperative association <u>without</u> capital stock.'" J.A. 318–19 (underline in original) (quoting N.C. Gen. Stat. § 54-142.1).

Since the parties agree that the Cooperative contains capital stock, the district court determined that the Business Corporation Act applies to the Cooperative. And it further held that the members failed to state a claim for judicial dissolution under the Business Corporation Act.[1]

The members timely appealed and we have jurisdiction under 28 U.S.C. § 1291. "We review de novo the grant of a motion to dismiss for failure to state a claim, applying the same standards as the district court." *Fairfax v. CBS Corp.*, 2 F.4th 286, 291 (4th Cir. 2021) (quotations omitted).

## II.

On appeal, the members challenge the district court's determination that claims for the Cooperative's dissolution should be analyzed under the Business Corporation Act. The members argue that the Nonprofit Corporation Act, not the Business Corporation Act, applies to judicially dissolve the Cooperative. According to the members, even if the Cooperative was formed with capital stock, it is, at its core, a nonprofit corporation. Thus,

---

[1] The district court further held that, even if the Nonprofit Corporation Act applied, plaintiffs nevertheless failed to state a claim. But because we conclude that the Nonprofit Corporation Act does not apply for reasons discussed *infra*, we need not address the members' challenge to this part of the district court's order.

the members insist that the district court, which focused on the "with capital stock" language in North Carolina General Statute § 54-142, erred because it ignored the other words of the statute. Those words provide that the Business Corporation Act applies only to the extent that it is "appropriate" and not "in conflict with or inconsistent with the express provisions of this Subchapter." *See* N.C. Gen. Stat. § 54-142.

The members' appeal requires us to interpret North Carolina statutory law. Section 55A-14-30 in the Nonprofit Corporation Act provides the grounds for dissolving nonprofit corporations. Section 55-14-30 in the Business Corporation Act provides the grounds for dissolving business corporations. While the Nonprofit Corporation Act, specifically in § 55A-14-30(a)(2)e, permits dissolution when "[t]he corporation is no longer able to carry out its purposes," the Business Corporation Act's counterpart, § 55-14-30, does not. Importantly, the only ground advanced by the members for dissolution is that the Cooperative is no longer able to carry out its purposes. Therefore, the determination as to whether the Nonprofit Corporation Act or the Business Corporation Act applies to the Cooperative is determinative in this appeal.

## A.

To answer that question, we first turn to the Marketing Act. The Marketing Act governs cooperative associations, just like the Cooperative. However, the Marketing Act does not contain provisions for the dissolution of cooperative associations. Instead, it contains two provisions that point to provisions outside the Marketing Act that address the dissolution of cooperative associations.

5

The first provision in the Marketing Act we look to is § 54-142. It applies to cooperative associations "with capital stock":

> The provisions of the North Carolina Business Corporation Act (Chapter 55 of the General Statutes) shall apply, so far as appropriate, to every cooperative association with capital stock heretofore or hereafter organized or domesticated under this Subchapter, except where the provisions of that act are in conflict with or inconsistent with the express provisions of this Subchapter.

N.C. Gen. Stat. § 54-142.

The second provision we look to is § 54-142.1. It applies to cooperative associations "without capital stock":

> The provisions of the Nonprofit Corporation Act (Chapter 55A of the General Statutes) shall apply, so far as appropriate, to every cooperative association without capital stock heretofore or hereafter organized or domesticated under this Subchapter, except where the provisions of that act are in conflict with or inconsistent with the express provisions of this Subchapter.

*Id.* § 54-142.1.

Effectively, the only difference between these two statutes is that § 54-142 states "with capital stock" whereas § 54-142.1 states "without" capital stock. Reading these two provisions together then, the primary factor in determining which provisions apply to a cooperative association's dissolution is whether it has capital stock. If it does, the Business Corporation Act—which does not allow for dissolution when a corporation is no longer able to carry out its purposes—applies. If it does not, the Nonprofit Corporation Act— which does allow so—applies. Here, the Cooperative contains capital stock. This suggests the Cooperative's dissolution is governed by the Business Corporation Act.

6

But as the members fairly point out, the existence of capital stock, while important to our question, is not wholly dispositive given other language in the provisions. Both § 54-142 and § 54-142.1 bookend their capital stock language with the following two conditional phrases: "so far as appropriate" and "except where the provisions of that act are in conflict with or inconsistent with the express provisions of this Subchapter." Thus, we must decide whether those phrases lead us to a different outcome.

## B.

We begin with the phrase "except where the provisions of that act are in conflict with or inconsistent with the express provisions of this Subchapter." In that phrase, North Carolina indicated that if any provision in the Business Corporation Act conflicted with, or even was inconsistent with, the express provisions of the Marketing Act, such provision might not apply. But we have no such conflicting provisions here. In fact, when pressed to point to specific conflicting or inconsistent provisions, the members failed to identify any. As a result, the "in conflict with or inconsistent with" language does not override the "with capital stock" language in determining whether the Business Corporation Act's provisions apply to the Cooperative's dissolution.

## C.

That leaves the phrase "so far as appropriate." Our consideration of this phrase implicates several canons of statutory construction.

One canon of construction provides that we should not construe statutes in a way that renders words meaningless. *State v. Williams*, 212 S.E.2d 113, 119 (N.C. 1975) (discussing the "well established principle of statutory construction that a statute must be

7

construed, if possible, so as to give effect to every part of it"); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law* 174–79 (2012) (discussing how "[i]f possible, every word and every provision is to be given effect"). Thus, "so far as appropriate" must mean something. More specifically, it must mean there can be circumstances where a cooperative has capital stock but is not to be dissolved in accordance with the Business Corporation Act provisions. But North Carolina did not define the phrase and neither we nor the parties found any reported North Carolina decisions interpreting it.

The members argue that the differences between shareholders of business corporations and members of cooperatives make it "inappropriate" to apply the dissolution provisions of the Business Corporation Act. But that cannot be right. Those differences exist with every cooperative. And determining that those differences make it inappropriate to apply the Business Corporation Act's dissolution procedures would effectively write out the "with capital stock" language of North Carolina General Statute § 54-142. Such an interpretation violates the canon of construction that provisions should be interpreted so they are compatible, not contradictory. *See Burgess v. Joseph Schlitz Brewing Co.*, 259 S.E.2d 248, 251 (N.C. 1979) (favoring an interpretation "which harmonizes with the other provisions of the statute" over one which would "defeat or impair" the statute); *see also* Scalia & Garner, *supra*, at 180–82 ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory.")

The members' interpretation also violates the canon of construction that statutory language should not be interpreted in a way where the exception swallows the rule. *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 623 S.E.2d 315, 319 (N.C. Ct.

8

App. 2006) (rejecting a statutory interpretation because "the exception would swallow the rule"), *aff'd*, 636 S.E.2d 564 (N.C. 2006); *see also Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (avoiding interpreting an exception in a way that "would swallow the rule"). "So far as appropriate" is an exception to the general rule of § 54-142 that "[t]he provisions of the North Carolina Business Corporation Act (Chapter 55 of the General Statutes) shall apply . . . to every cooperative association with capital stock heretofore or hereafter organized or domesticated under this Subchapter." But the members' interpretation would apply to every cooperative. And if such an interpretation applied to all cooperatives, there would be no room left for § 54-142's general rule. The "so far as appropriate" exception would swallow it.

The members also point out the Cooperative is a nonprofit corporation under North Carolina General Statute § 54-130, which provides: "Associations organized or domesticated hereunder shall be deemed nonprofit, inasmuch as they are not organized to make profits for themselves, as such, or for their members, as such, but only for their members as producers." From this fact, they argue that it would be inappropriate to apply the dissolution provisions of the Business Corporation Act, and rather that the provisions of the Nonprofit Corporation Act apply to a nonprofit entity. But the Marketing Act requires all cooperative associations to be nonprofit. *See* N.C. Gen. Stat. §§ 54-130, 54-131 ("Three or more persons engaged in the production of agricultural products may form a nonprofit, cooperative association, with or without capital stock, under the provisions of this Subchapter."). Thus, under the members' logic, any entity incorporated under the Marketing Act would be dissolved under the Nonprofit Corporation Act. Such an

9

interpretation would also effectively render § 54-142's "with capital stock" language, and, to an extent, § 54-142.1's "without capital stock" superfluous. The North Carolina legislature made a conscious decision that, regardless of the cooperative's nonprofit nature, the applicability of the Business Corporation Act or the Nonprofit Corporation Act hinges on the existence of capital stock. We refuse to write that choice out of the statute.

Finally, the members generally argue "much has changed since this Cooperative was formed." Opening Br. 38. In advancing this position, the members repeat the same factors they contend make the Cooperative unable to carry out its purposes. They may be right. But even if they are, that argument puts the cart before the horse. At this juncture, our decision is whether to apply the dissolution provisions of the Business Corporation Act or the Nonprofit Act—before we apply the facts to the dissolution provisions. And the only variable that North Carolina provided to guide our analysis on which provision applies is whether the Cooperative is "with" or "without" capital stock.

In sum, the members fail to explain why applying the Business Corporation Act's dissolution provisions here would contradict the statute's "so far as appropriate" language. Therefore, we maintain that since the Cooperative is organized "with capital stock," the Business Corporation Act governs the Cooperative's dissolution. And as noted above, the failure of a corporation to carry out its purposes—the only ground advanced by the

10

members—is not a ground for dissolution under that Act. Accordingly, we affirm the district court's dismissal of the members' claim for judicial dissolution.[2]

III.

"Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *State v. Alonzo*, 838 S.E.2d 354, 356 (N.C. 2020). Here, the "with capital stock" language of § 54-142 and the "without capital stock" language of § 54-142.1 are clear. The Cooperative has capital stock. That means any judicial dissolution claims are governed by the Business Corporation Act. The Business Corporation Act does not list the failure of a corporation to carry out its purposes as a ground for dissolution. But that is the only ground which the members press on appeal. Therefore, the district court did not err in dismissing the members' amended complaint.

*AFFIRMED*

---

[2] The members also challenge the district court's dismissal of their claim for declaratory relief. We reject that challenge as well. With no basis for judicial dissolution for all the reasons discussed above, there is no basis for declaratory judgment either. The district court did not abuse its discretion in dismissing the members' claim for declaratory judgment. *Cf. Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").