**AFFIRMED IN PART, REVERSED IN PART, and REMANDED; and Opinion Filed February 2, 2024**



**In the**

**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01231-CV**

**HOUSE OF RAEFORD FARMS, INC., OZARK MOUNTAIN POULTRY, INC., AND FIELDALE FARMS CORPORATION, Appellants**
**V.**
**SOMMA FOOD GROUP, LLC, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. DC-17-00698, DC-21-17119**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Kennedy
Opinion by Justice Carlyle

In this consolidated appeal, House of Raeford Farms, Inc., Ozark Mountain Poultry, Inc., Fieldale Farms Corporation, and SOMMA Food Group, LLC each challenge various aspects of the trial court's final judgment entered after a jury trial. Raeford, Ozark, and Fieldale also challenge the trial court's judgment dismissing their petition for a bill of review. We affirm and reverse the final judgment in part, affirm the trial court's judgment dismissing the bill of review, and remand for further proceedings consistent with this memorandum opinion. *See* TEX. R. APP. P. 47.4.

This dispute stems from contaminated chicken tenders SOMMA sold to the New York City Department of Education (NYCDOE) for its school cafeterias. Raeford manufactured the tenders for SOMMA, using raw chicken provided by Ozark and Fieldale. Almost immediately after SOMMA began supplying the tenders to the NYCDOE in June 2016, consumers began finding bone shards and pieces of plastic in them.

After SOMMA told Raeford about the consumer complaints, Raeford sent SOMMA a September 23, 2016 letter promising to assess its suppliers' x-ray capabilities for detecting objects in the raw materials. Raeford explained that if it had to start x-raying the product itself, SOMMA would have to agree to a price change to "cover the extra value added process step." On September 29, 2016, SOMMA instructed Raeford to begin x-raying the product at an additional cost of 8.8 cents per pound. Further, SOMMA instructed Raeford to "use the material from Fieldale that has been through the X ray" and use "up the load from" Ozark, who lacked x-raying capabilities, noting that it would "work on the issue before moving forward with [Ozark's] product."

After providing those instructions to Raeford, SOMMA placed nine more orders between October 13 and November 16, 2016. SOMMA did not pay for those orders, and it soon switched manufacturers from Raeford to non-party OK Foods. But the switch did not solve SOMMA's manufacturing problems. In fact, consumers also found objects in the tenders manufactured by OK Foods, including pieces of

metal, which ultimately led to a USDA recall in March 2017. The NYCDOE then pulled all of SOMMA's products from its menus.

SOMMA sued Raeford in January 2017, alleging various causes of action including breach of contract, negligence, and fraud. Raeford countersued for breach of contract and asserted cross-claims against Ozark and Fieldale. SOMMA amended its petition to add claims against Ozark and Fieldale.

The case went to trial, and the jury returned a verdict mostly in SOMMA's favor. The jury found that Raeford breached its contract with SOMMA, causing $2,504,699 in damages. But the jury also found that SOMMA breached its contract with Raeford, causing $505,841.05 in damages. In addition, the jury found in SOMMA's favor on its negligence claims, finding that SOMMA suffered $7,639,466.25 in damages and apportioning negligence 25% to SOMMA, 50% to Raeford, 10% to Fieldale, 10% to Ozark, and 5% to OK Foods. The jury rejected SOMMA's gross negligence and fraud theories. With respect to Raeford's cross-claims, the jury found Ozark and Fieldale breached their contracts with Raeford, with each responsible for $1,018,595.50 in damages.[1]

The trial court entered final judgment on the verdict, awarding SOMMA the $2,504,699 in contract damages the jury found against Raeford and awarding

---

[1] Raeford did make an indemnity claim, and the jury found Ozark and Fieldale each supplied defective products that Raeford in turn supplied to SOMMA causing injury. But the trial court did not enter an award on Raeford's indemnity claim, no party appeals from the trial court's decision not to award damages for indemnity, and thus we need not address Fieldale's challenges to Raeford's indemnity claim.

SOMMA its attorney's fees for that claim. The trial court also awarded SOMMA $763,946.63 each from Fieldale and Ozark based on the jury's findings that each was 10% responsible for SOMMA's negligence damages. The trial court did not award negligence damages against Raeford. With respect to Raeford's claims, the trial court awarded $1,018,595.50 in contract damages each from Fieldale and Ozark, but it disregarded the jury's verdict on Raeford's contract claim against SOMMA and did not award attorney's fees on any of Raeford's contract claims.

Each party appealed or cross-appealed from portions of the final judgment. And while those appeals were pending, federal officials filed criminal charges against SOMMA's principals, alleging that they bribed a senior executive of the NYCDOE, Eric Goldstein, by providing him with equity and cash through a separate entity—Range Meats Supply Company, LLC (RMSC)—in exchange for his assistance in getting and keeping SOMMA's products on NYCDOE menus. According to the criminal complaint and affidavit in support, Mr. Goldstein oversaw the management, budget, and operations for the NYCDOE's Office of Food and Nutrition Services, which was responsible for procuring contracts with food manufacturers and distributors.

After learning about the criminal allegations and on Raeford's motion, we abated the parties' pending appeals from the final judgment so Raeford could pursue a bill of review in the trial court. Fieldale, Ozark, and Raeford filed a petition for bill of review asking the trial court to set aside the final judgment alleging that SOMMA

fraudulently withheld information about its principals' alleged bribery scheme, preventing the parties from asserting meritorious defenses to SOMMA's claims.

The trial court summarily dismissed the petition for bill of review, and Fieldale, Ozark, and Raeford appealed. We reinstated the parties' appeals and cross-appeals from the final judgment and consolidated them into the appeal from the bill of review dismissal.

FIELDALE'S APPEAL FROM THE FINAL JUDGMENT

*SOMMA's Negligence Award against Fieldale*

Fieldale first challenges the negligence award in favor of SOMMA, arguing that SOMMA's negligence claim is barred by the economic loss rule. "In actions for unintentional torts, the common law has long restricted recovery of purely economic damages unaccompanied by injury to the plaintiff or his property—a doctrine . . . referred to as the economic loss rule." *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 235 (Tex. 2014). Whether the rule applies to bar a tort claim is a question of law we review de novo. *Eagle Oil & Gas C. v. Shale Expl., LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd).

The "rule was initially formulated to set perimeters in product liability cases." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011). It applies in that context "when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself." *Id.* at 417–18 (quoting *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex.

2007)). In products cases, "when no physical injury has occurred to persons or other property," "the parties' economic losses [are] more appropriately addressed through statutory warranty actions or common law breach of contract suits than tort claims." *Id.* at 418. And the rule applies to bar these tort claims "even [when] parties [are] not in privity (*e.g.* a remote manufacturer and a consumer)." *Id.*; *see also Pugh v. Gen. Terrazzo Supplies, Inc.*, 242 S.W.3d 84, 92 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (The "economic loss doctrine has been . . . applied to preclude tort claims for economic losses made directly against a manufacturer or supplier of a defective component part that causes damage to the 'finished product' into which the component is incorporated.").

The rule has two primary rationales: (1) because purely economic harm is not self-limiting like physical injury is, allowing its recovery in tort could lead to indeterminate and disproportionate liability that discourages economic activity; and (2) the risks of economic losses are well suited to allocation by contract, where parties familiar with their own economic needs may protect themselves through insurance or indemnity agreements and price their transactions accordingly. *See LAN/STV*, 435 S.W.3d at 241 (citing RESTATEMENT (THIRD) OF TORTS § 1 cmt. c.) (Am. L. Inst. 2012)); *see also Equistar Chems., L.P.*, 123 S.W.3d at 590 ("The rule is based on the proposition that commercial parties may negotiate for whatever warranty or liability limits they choose, and adjust their price accordingly.").

Here, SOMMA sought to recover negligence damages for purely economic losses caused by a defective product. Indeed, SOMMA's damages expert testified that he calculated economic damages, and the jury awarded only economic "lost profits" damages on SOMMA's negligence claim. *See Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 78 n.1 (Tex. 1977) (explaining that "loss of profits resulting from inability to make use of the defective product" is a "consequential economic loss"). SOMMA's negligence award is the sort of tort recovery prohibited by the economic loss rule.

SOMMA points to the supreme court's instruction in *LAN/STV* that there is no "bright-line rule" applicable in all situations and that determining whether the economic loss rule applies in a "particular kind of situation" requires an analysis of whether the rationales behind the rule justify its application. *See* 435 S.W.3d at 235–36, 241. Precedent governs the outcome in the situation at issue, where a commercial entity seeks to recover economic losses resulting from a defective product: Texas courts have concluded that the rationales behind the economic loss rule favor its application. *See Mid Continent Aircraft Corp. v. Curry Cnty. Spraying Service, Inc.*, 572 S.W.2d 308, 312–13 (Tex. 1978); *Equistar Chems., L.P. v. Dresser-Rand Co.*, 123 S.W.3d 584, 587, (Tex. App.—Houston [14th Dist.] 2003) ("In transactions between commercial buyers and sellers, if damage occurs only to the product that passed between them, the claim is one for economic loss and must be brought on the parties' contract; conversely, if there is physical injury to persons or 'other property'

(that is, property other than the product itself), those claims may be brought in tort."), *overruled on other grounds*, 240 S.W.3d at 867.

We disagree with SOMMA that the rationales underlying the economic loss rule do not support its application here. Allowing SOMMA to reach up the supply chain to recover purely economic losses against other parties involved in manufacturing its product risks imposing the sort of indeterminate and disproportionate liability the rule is intended to protect against. If SOMMA wished to insulate itself against economic loss beyond the remedies provided by the Uniform Commercial Code, it could have contracted to do so, and the parties could have priced their transactions accordingly. *See LAN/STV*, 435 S.W.3d at 241; *Equistar Chems., L.P.*, 123 S.W.3d at 590.

We cannot agree with SOMMA's argument that the economic loss rule does not apply because Fieldale breached an independent duty it owed SOMMA. *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (the economic loss rule does not bar a tort claim if "the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit"); *see also Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 634 n.10 (Tex. App.—Dallas 2020, no pet.) (the key to tort claims falling outside the economic loss rule "is whether the defendant owes the plaintiff a duty independent from the contractual duty"). SOMMA cites *Jacob E. Decker & Sons v. Capps*, 164 S.W.2d

828, 829 (Tex. 1942), as establishing a "special duty" owed by food manufacturers to ensure that their products are safe for human consumption. To the extent *Decker* established a duty, that duty is owed only to the "ultimate consumer" whose consumption of contaminated food could be "disastrous to human health and life." *Id.* Regardless, the supreme court later explained that *Decker* is not "authority for allowing the recovery of economic loss." *Nobility Homes*, 557 S.W.2d at 78.

SOMMA's reliance on duties Fieldale may have owed under federal safety regulations is similarly misplaced. Fieldale's duty to comply with federal safety regulations is a duty owed to the United States for the benefit of consumers, and commercial parties like SOMMA cannot assert private causes of action for violations of those regulations. *See* 21 U.S.C. § 467c ("All proceedings for the enforcement or to restrain violations of this chapter shall be by and in the name of the United States."). Fieldale owes SOMMA no actionable, independent duties under those regulations.

We agree with Fieldale that the economic loss rule precludes SOMMA's negligence award, need not address Fieldale's other arguments challenging SOMMA's negligence award, and reverse and render judgment that SOMMA take nothing on its negligence claim against Fieldale.

*Raeford's Contract Award against Fieldale*

Evidence is legally insufficient when: "(1) the record discloses a complete absence of evidence of a vital fact"; "(2) the court is barred by rules of law or

evidence from giving weight to the only evidence offered to prove a vital fact"; "(3) the evidence offered to prove a vital fact is no more than a mere scintilla"; or "(4) the evidence conclusively establishes the opposite of a vital fact." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 736 (Tex. 2018). In reviewing legal sufficiency, we must consider all record evidence in the light most favorable to the verdict. *Id.* And "the final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

To prove its claim for breach of contract, Raeford had to establish: (1) a valid contract; (2) its performance or tendered performance; (3) Fieldale's breach; and (4) damages resulting from that breach. *See Dixie Carpet*, 599 S.W.3d at 625. We agree with Fieldale that the evidence does not support the jury's conclusion that it breached its contract with Raeford by failing to provide "boneless" raw chicken according to the parties' agreement.

The evidence at trial established Raeford understood the term "boneless"—as it applied to the raw materials Fieldale provided for further processing—did not mean 100% bone-free. Rather, Raeford understood that as long as bone content was kept below certain thresholds, the product would qualify as "boneless" even if it contained small amounts of bone. Indeed, Raeford expert Dr. Kevin Keener testified that Raeford knew or should have known the "boneless" raw materials it received from suppliers would contain some bones. He added that federal labeling regulations

–10–

required only that "boneless" poultry products not "have a bone solids content of more than 1 percent calculated on a weight basis," noting that such regulation was the only federal regulation addressing bone content in "boneless poultry products." Dr. Keener testified that Raeford's internal "boneless" standard allowed for "no more than two bones of a half-inch in size per 10 pounds or no more than one large bone per 10 pounds." According to Dr. Keener, "every piece of raw material that Fieldale submitted" satisfied Raeford's "boneless" standards. And Raeford corporate representative Marty Gautreau testified that Raeford "got exactly what [it] ordered from Fieldale."

But the jury found Fieldale breached its agreement to provide Raeford with "boneless" raw materials because bones were found in the chicken tenders Raeford produced using raw materials supplied by Fieldale and Ozark. Raeford argues the jury was free to disregard its own representatives' testimony and adopt the understanding espoused by SOMMA expert Dr. William James, who opined that "'boneless' means 'without bones.'" From that premise, Raeford argues the jury was free to conclude Fieldale breached its contract with Raeford because the raw materials Fieldale provided were not "without bones."

Although Raeford is correct that a jury is generally free to resolve conflicts in the evidence, there is no material conflict as to what Raeford and Fieldale—the only parties to the contract at issue—understood "boneless" to require. Direct, uncontroverted evidence established that Raeford understood and agreed that the

"boneless" chicken Fieldale provided did not have to be 100% bone-free and that Fieldale gave Raeford "exactly what [it] ordered." The jury was not free to disregard the evidence of Raeford's understanding of what "boneless" required in its contract with Fieldale, to find a breach based on a third party's understanding of what "boneless" might require outside the context of Raeford's contract with Fieldale.

The evidence conclusively establishes the opposite of a vital fact—the meaning of "boneless" between Raeford and Fieldale—and therefore is legally insufficient to support the jury's verdict that Fieldale breached its agreement with Raeford by failing to provide "boneless" raw materials. Accordingly, we need not address Fieldale's arguments concerning whether Raeford sufficiently proved it suffered damages on that claim. We reverse and render judgment that Raeford take nothing on its breach of contract claim against Fieldale.

OZARK'S APPEAL FROM THE FINAL JUDGMENT

*SOMMA's Negligence Award against Ozark*

Ozark also argues SOMMA's negligence award is barred by the economic loss rule. The legal questions and material facts governing this issue are identical to those regarding SOMMA's negligence award against Fieldale. For the same reasons we explained above, we conclude that SOMMA's negligence claim against Ozark is barred by the economic loss rule. Accordingly, we need not reach Ozark's other arguments challenging SOMMA's negligence award. We reverse and render judgment that SOMMA take nothing on its negligence claim against Ozark.

*Raeford's Contract Award against Ozark*

Ozark also appeals Raeford's award for breach of contract. The legal questions governing this issue are identical to those we addressed regarding Raeford's contract award against Fieldale, and the facts are nearly identical. As we noted above, Raeford's representatives testified directly that Raeford was aware there could be bones in the raw materials it received, and its expert testified that Raeford's own internal standard for "boneless" did not require that a product be 100% bone-free. Raeford's corporate representative further testified that with respect to its orders from Ozark, Ozark gave Raeford what it asked for.

For the same reasons we outlined regarding Fieldale, we reject Raeford's argument that the jury was free to disregard its own representatives' testimony as to Raeford's understanding of what its contract with Ozark required in favor of applying SOMMA's expert's understanding of what "boneless" required outside the context of the contract between Raeford and Ozark. The evidence does not sufficiently support the jury's conclusion that Ozark breached its contract by failing to provide "boneless" raw materials as the parties at issue understood that term. We reverse and render judgment that Raeford take nothing on its breach of contract claim against Fieldale.[2]

---

[2] Because of our disposition, we need not reach Ozark's arguments concerning whether Raeford sufficiently proved it suffered damages or whether the trial court erred in its charge to the jury concerning Raeford's contract damages. We also need not address Raeford's conditional cross issue concerning error in rejecting Raeford's proposed question on its contract damages.

*Raeford's Breach of Contract Claim against SOMMA*

Raeford contends the trial court erred by disregarding the jury's findings that SOMMA breached its contract with Raeford and caused Raeford $505,841.05 in damages. A trial court may disregard a jury finding only if it has no support in the evidence or if it is immaterial. *Se. Pipe Line Co., Inc. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999). "A question is immaterial when it should not have been submitted, it calls for a finding beyond the province of the jury, such as a question of law, or when it was properly submitted but has been rendered immaterial by other findings." *Id.*

SOMMA concedes that the evidence shows it did not pay for a portion of the chicken tenders it received from Raeford, which sufficiently supports the jury's findings on breach and damages. But SOMMA claims the trial court correctly disregarded the jury's findings because they are immaterial in light of the jury's finding that Raeford breached its contract with SOMMA. According to SOMMA, the evidence conclusively established that Raeford materially breached the contract first by providing SOMMA with "boneless" chicken tenders containing bone, rendering those tenders dangerous and unfit for human consumption. SOMMA argues Raeford's prior material breach excused its refusal to pay Raeford.

When a party materially breaches a contract, the other party is excused from any further obligation to perform under the contract and the non-breaching party

–14–

may terminate the agreement and sue for breach. *See Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 61, 692 (Tex. 1994); *Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006). But if the non-breaching party treats the contract as continuing after the material breach, it deprives itself of any excuse for ceasing its own performance and "the contract continues in force for the benefit of both parties." *Rescue Concepts Inc. v. HouReal Corp.*, --- S.W.3d ---, No. 01-20-00553-CV, 2022 WL 2976299, at *7 (Tex. App.—Houston [1st Dist.] July 28, 2022, pet. denied) (quoting *Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)).

Here, even if the evidence conclusively established that Raeford materially breached the parties' contract first by failing to remove all bones from the chicken tenders it sold SOMMA, the evidence also established that SOMMA was aware of that material breach by September 2016. Yet, instead of terminating the agreement and suing Raeford for damages, SOMMA elected to treat the agreement as continuing. Indeed, it notified Raeford of the bone complaints in September 2016 and instructed Raeford to begin x-raying the product at an additional cost of 8.8 cents per pound in an effort to avoid further bone contamination. SOMMA also instructed Raeford at that time to "use the material from Fieldale that ha[d] been through the X ray" and use up "the load from" Ozark, noting that it would "work on the issue before moving forward with [Ozark's] product." SOMMA then placed—but refused to pay for—nine more orders between October 13 and November 16, 2016.

By treating the contract as continuing after learning that Raeford had materially breached the agreement, SOMMA deprived itself of any excuse for refusing to pay for the additional product it ordered after that breach. At a minimum, the evidence raised a fact issue as to whether SOMMA treated the contract as continuing after it knew Raeford was not providing a bone-free product. And fact issues existed with respect to the timing and materiality of any other breaches SOMMA alleges may have justified its refusal to pay for the orders it placed after learning about the bone complaints. On this record, SOMMA did not conclusively establish its prior material breach defense, and the trial court could not rely on that defense as grounds to disregard the jury's finding that SOMMA breached its contract with Raeford.

SOMMA also argues that the trial court could have properly disregarded the jury's findings because the jury question addressing SOMMA's breach "improperly submitted U.C.C. issues regarding a claim Raeford pleaded as breach of a contract for services." This argument lacks merit. SOMMA seizes on a few statements in Raeford's counterclaim suggesting it provided "services" in connection with producing the chicken tenders for SOMMA. Based on those statements, SOMMA argues that Raeford pleaded its claim as one for breach of a "service" contract that falls outside the UCC. This ignores Raeford's statements specifically describing the contract at issue as one for "products." Indeed, Raeford stated that it "and SOMMA are parties to a valid and enforceable contract in the form of accepted purchase

orders, invoices, bills of lading, and other documents and agreements by which [Raeford] promised to supply certain chicken products to SOMMA and SOMMA agreed to pay [Raeford] for those products." Raeford further stated that it performed under the contract by "producing the chicken" and "tendering that chicken to SOMMA for delivery." Contrary to SOMMA's assertions, Raeford did not judicially admit that the "contract at issue was one for services" to which the UCC does not apply.

That said, when "a contract contains a mix of sales and services, the UCC applies if the sale of goods is the 'dominant factor' or 'essence' of the transaction." *See Summit Glob. Contractors, Inc. v. Enbridge Energy, L.P.*, 594 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The "dominant factor" or "essence" of the Raeford-SOMMA agreement was the sale of goods—processed chicken tenders—not services, and we conclude the UCC applies. The trial court could not disregard the jury's breach and damages findings on the basis that the jury charge erroneously referred to UCC issues.

SOMMA next argues the trial court could have properly disregarded the jury's breach and damages findings even if the UCC applies because the charge did not instruct the jury on revocation of acceptance. Under the UCC, a buyer may revoke his acceptance of non-conforming goods if certain conditions are satisfied. *See* TEX. BUS. & COM. CODE § 2.608. According to SOMMA, Raeford was required to prove SOMMA did not timely revoke its acceptance of the chicken tenders as an element

–17–

of its claim for breach of contract. From that premise, SOMMA argues that Raeford's failure to submit that "element" in the jury charge entitled SOMMA to a judgment in its favor.

SOMMA's argument is based on an incorrect premise. Revocation of acceptance is not an element of a seller's claim for breach of contract; it is a defense, and the buyer bears the burden to plead, prove, and request the court submit it as a jury issue. *See Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 695 (Tex. App.—Austin 1989, no pet.) ("Having accepted the boat, the [buyers] had the burden to plead and prove proper revocation of acceptance under section 2.608 of the UCC. The [buyers] failed to plead revocation, request the submission of a jury issue on revocation, or prove revocation as a matter of law. Accordingly, the [buyers] are not entitled to revocation as a matter of law under the UCC."); *see also Cooper v. Lyon Fin. Servs.*, 65 S.W.3d 197, 205–06 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (revocation of acceptance is a defense to a breach of contract claim; when buyer failed to submit a substantially correct instruction on the issue, the trial court properly declined to give the instruction). As the seller, Raeford had no burden to seek an instruction on revocation of acceptance. SOMMA failed to plead revocation or submit a substantially correct jury instruction on that issue,[3] was not entitled to a

---

[3] The parties dispute whether SOMMA produced evidence that could support a revocation submission. We need not decide that issue because, assuming the evidence was sufficient, SOMMA did not (a) plead revocation or (b) submit a substantially correct instruction that would entitle it to a submission on the issue.

revocation instruction, and the trial court could not disregard the jury's verdict in Raeford's favor on this basis. *See* TEX. R. CIV. P. 278; *Carrow*, 781 S.W.2d at 695.

We agree with Raeford that there was no permissible basis for the trial court to disregard the jury's findings on its breach of contract claim against SOMMA. We reverse and render judgment awarding Raeford the contract damages the jury found against SOMMA.

*Raeford's Request for Attorney's Fees against SOMMA*

Raeford next contends that because the trial court erred by disregarding the jury's findings in its favor on its breach of contract claim against SOMMA, the trial court also erred by denying its request for attorney's fees incurred pursuing that claim. To recover attorney's fees from an opponent, the prevailing party must prove both that such recovery is legally authorized and that the requested fees are reasonable and necessary. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). Fee-shifting is not legally authorized "unless there is specific statutory or contractual authority allowing it." *Id.*

Raeford contends it is entitled to recover its attorney's fees under an agreement SOMMA signed as part of an application for credit. As relevant to the issues on appeal, the credit agreement states:

> I/We, the undersigned, in consideration of House of Raeford, Inc. extending credit to the above named applicant, do hereby unconditionally guarantee payment of all indebtedness, liabilities, or obligations applicant shall at any time owe to House of Raeford Farms, Inc. . . . This guarantee extends to and includes any and all interest due

or becom[ing] due together with . . . all costs and expenses including but not limited to collection agency fees, attorney fees and court costs incurred by House of Raeford Farms, Inc. in connection with any matter covered by this agreement.

SOMMA contends Raeford cannot recover its attorney's fees under that agreement because Raeford did not plead the agreement as a basis for recovering those fees. But SOMMA did not object to Raeford's fee request on that basis. Instead, SOMMA offered its own arguments and evidence attacking Raeford's fee request as unreasonable. Indeed, SOMMA's attorney expert testified:

> House of Raeford claims that its fees derive from a purported credit agreement that was never discussed or published to the jury at trial, and about which no one asked a single question throughout the case. In my opinion, no evidence supports House of Raeford's request for $2,051,935.86 based on 11 lines of testimony and an alleged credit agreement that was partially executed, never discussed during any deposition, and never shown to the jury.

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings." TEX. R. CIV. P. 67. Here, the record demonstrates that SOMMA tried the issue of Raeford's fee request under the credit agreement by consent, and thus Raeford's pleadings provide no grounds for denying Raeford's fee request under that agreement.

We disagree with SOMMA's assertion that the agreement does not apply to Raeford's breach of contract claim. The jury found that SOMMA breached its contract with Raeford by refusing to pay for products it ordered and accepted from

Raeford. One of the matters "covered by" the credit agreement was SOMMA's unconditional guarantee to pay "all indebtedness, liabilities, or obligations [SOMMA] shall at any time owe to" Raeford. Thus, any attorney's fees Raeford incurred to collect the balance owed by SOMMA for the products it accepted but did not pay for were incurred "in connection with [a] matter covered by" the credit agreement.

SOMMA also contends Raeford cannot recover its fees because it failed to prove those fees were reasonable and necessary. Although a trial court has discretion to determine what attorney's fees are reasonable and necessary, it lacks discretion to deny those fees entirely when an award is required under the parties' contract. *VSDH Vaquero Venture, Ltd. v. Gross*, No. 05-16-01041-CV, 2017 WL 3405312, at *5 (Tex. App.—Dallas Aug. 9, 2017, no pet.) (mem. op.). Here, the trial court did not determine the amount of Raeford's reasonable and necessary fees because it erroneously disregarded the jury's verdict on Raeford's contract claim against SOMMA. Under these circumstances, remand is appropriate to allow the trial court to determine the amount of Raeford's reasonable and necessary fees in the first instance. We reverse the judgment denying Raeford's attorney's fees on its contract claim against SOMMA and remand for the trial court to determine the amount of fees it will award Raeford.

*SOMMA's Attorney's Fees Award against Raeford*

Raeford next contends the trial court erred by awarding SOMMA attorney's fees on its contract claim against Raeford because those fees are not authorized by statute or contract. SOMMA sought to recover its attorney's fees under civil practices and remedies code section 38.001, but Raeford argues that statute does not apply for two reasons: (1) Texas law does not govern SOMMA's contract claim; and (2) Raeford is not a "corporation." The availability of attorney's fees under a given statute is a question of law we review de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam).

Raeford first argues, without acknowledging SOMMA's Texas connections, that either New York or North Carolina law should govern the availability of attorney's fees because those states have the "most significant relationship" to SOMMA's contract claim. But Raeford submitted both its own contract claim and its fee request against SOMMA under Texas law, and it does not explain why Texas has a significant enough relationship to govern its own contract claim but not SOMMA's claim for breach of the same contract. Raeford also failed to object when SOMMA submitted its contract claim to the jury under Texas law.

Regardless, choice of law issues can be waived if not properly invoked. *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 473 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). A party wishing to require the application of another state's law must make a motion under rule 202 asking the court to take judicial notice of

the other state's law, and it must supply the court with the necessary information to do so. *See* TEX. R. EVID. 202; *Collins v. Tex Mall, L.P.*, 297 S.W.3d 409, 414 (Tex. App.—Fort Worth 2009, no pet.). When a party fails to properly request judicial notice under rule 202, "Texas courts will simply presume that the law of the other state is identical to Texas law." *Collins*, 297 S.W.3d at 414 (quoting *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 65 (Tex. 2006) (Brister, J., dissenting)). By failing to file an appropriate motion under rule 202, Raeford waived its choice of law issue, and the trial court could presume Texas law was identical to that of any other potentially applicable jurisdiction.

Raeford also argues that even if Texas law applies, SOMMA cannot recover its fees under section 38.001 because, as a cooperative marketing association organized under North Carolina law, Raeford is not a "corporation" to which section 38.001 applies.[4] But a cooperative marketing association is, by definition, a corporation under North Carolina law. N.C. GEN. STAT. § 54-130 (an "association" is either any "corporation organized under" that subchapter or any "foreign corporation . . . organized . . . as a cooperative association" that meets certain other

---

[4] The version of section 38.001 in force when SOMMA commenced this action provided that a "person" asserting a claim for breach of contract could recover "reasonable attorney's fees from an individual or corporation." The Legislature amended the statute in 2021 to include other forms of business organizations, but the amendment applies only to those actions initiated after the amendment became effective in September 2021. *See* Act of June 15, 2021, 87th Leg., R.S., H.B. 1578, § 1, eff. Sept. 1, 2021. Other forms of business organizations are not liable for attorney's fees under the prior version of section 38.001. *See Varel Int'l Indus., L.P. v. PetroDrillbits Int'l, Inc.*, No. 05-14-01556-CV, 2016 WL 4535779, at *4 (Tex. App.—Dallas Aug. 30, 2016, pet. denied) (mem. op.) ("Under the plain language of section 38.001, a trial court cannot order limited liability partnerships (L.L.P.), limited liability companies (L.L.C.), or limited partnerships (L.P.) to pay attorneys' fees.").

criteria); *see also Speaks v. U.S. Tobacco Cooperative, Inc.*, 31 F.4th 838, 843 (4th Cir. 2022) (noting that a cooperative was "a nonprofit corporation" under the North Carolina Marketing Act). The trial court did not err by applying section 38.001, and we affirm the trial court's judgment to the extent it awards SOMMA attorney's fees against Raeford.

*Raeford's Request for Attorney's Fees against Ozark*

Raeford next contends the trial court erred by denying its request for attorney's fees against Ozark. Raeford argues that because it prevailed on its contract claim against Ozark, it is entitled to recover its attorney's fees under Arkansas Code § 16-22-308. Given our disposition rendering judgment that Raeford take nothing on its contract claim against Ozark, Raeford is not the prevailing party on that claim, and it is not entitled to recover its attorney's fees.

SOMMA'S CROSS-APPEAL FROM THE FINAL JUDGMENT

SOMMA argues the trial court erred by concluding the economic loss rule precluded its negligence claim against Raeford. SOMMA's arguments on this issue overlap almost entirely with those we rejected above with respect to Fieldale's and Ozark's appeals and we will not repeat our analysis here. The trial court did not err by concluding the economic loss rule barred SOMMA's negligence claim based on Raeford's failure to remove bones from the chicken tenders it sold.

SOMMA raises one argument unique to Raeford, contending the economic loss rule does not apply because Raeford breached an independent duty to avoid

negligently misrepresenting its experience, manufacturing capabilities, and intentions for SOMMA's product. There is some authority suggesting that negligently misrepresenting one's capabilities during pre-contract negotiations violates an independent duty for purposes of the economic loss rule. *See, e.g.*, *Correct RX Pharm. Servs., Inc. v. Cornerstone Automation Systems, L.L.C.*, 945 F.3d 423, 427 (5th Cir. 2019). But we need not decide whether the economic loss rule would bar SOMMA's negligent misrepresentation theory of recovery because the jury did not award any damages available under a negligent misrepresentation theory of recovery.

With respect to SOMMA's negligence claim, the jury found that SOMMA suffered $7,639,466.25 in lost profits and $0 in incidental costs. A plaintiff's damages for negligent misrepresentation "are limited to out-of-pocket damages." *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 506 (Tex. App.—Dallas 2008, no pet.). "Lost profits are not out-of-pocket damages." *Id.* Thus, even if the jury could have found that Raeford breached an independent duty by making a negligent misrepresentation, its damages award for SOMMA's negligence claim—which was limited to lost profits—rendered any such finding immaterial. The trial court did not err by disregarding the jury's verdict on SOMMA's negligence claim against Raeford.

Fieldale, Ozark, and Raeford argue the trial court erred by summarily dismissing their petition for a bill of review. A bill of review is an equitable action seeking to set aside a prior judgment that is no longer challengeable by a motion or appeal. *Baker v. Goldsmith*, 582 S.W.2d 404, 408–09 (Tex. 1979).

Courts do not readily grant bills of review because "it is fundamentally important in the administration of justice that some finality be accorded to judgments." *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950). And although "it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review." *Mosley v. Dallas Cnty. Child Protective Servs. Unit of Tex. Dep't of Protective and Regulatory Servs.*, 110 S.W.3d 658, 660 (Tex. App.—Dallas 2003, pet. denied). Nor is it sufficient merely to establish that crucial evidence was withheld or false testimony offered. As noted by the supreme court,

> the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.

*Tice v. City of Pasadena*, 767 S.W.2d 700, 703 (Tex. 1989) (quoting *United States v. Throckmorton*, 98 U.S. 61, 68–69 (1878)).

A petitioner seeking an equitable bill of review must plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which the petitioner was prevented from making by the opposing party's fraud, accident, or wrongful act, (3) unmixed with any fault or negligence on the petitioner's own part. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "The relevant inquiry is not whether 'the result would probably be different' on retrial." *Baker*, 582 S.W.2d at 408. When a bill of review is not based on a claim of non-service, the petitioner must first present prima facie proof of a meritorious defense. *Id.* This requires the petitioner to establish that its defense is not barred as a matter of law and that the petitioner "will be entitled to judgment on retrial if no evidence to the contrary is offered." *Id.* at 408–09. If the court determines the petitioner has not met that burden, it will dismiss the petition, but if the petitioner establishes prima facie proof of a meritorious defense, the court will conduct a trial on the merits of the bill of review. *Id.* at 409.

Here, the trial court summarily dismissed the petition before conducting a trial, and we review its ruling for abuse of discretion, indulging every presumption in its favor. *See U.S. Energy Mgmt., Inc. v. JRB Int'l, L.P.*, No. 05-16-00505-CV, 2017 WL 1532043, at *3 (Tex. App.—Dallas Apr. 26, 2017, no pet.) (mem. op.). That said, whether a petitioner has established a prima facie meritorious defense is a question of law, and we review that issue de novo. *See Mosley*, 110 S.W.3d at 661.

The petitioners contend the trial court erred by summarily dismissing the petition because: (1) the pending appeal of the original judgment does not negate the availability of a bill of review; (2) they met their burden to establish a prima facie meritorious defense to SOMMA's claims; and (3) the record either establishes or creates fact issues as to whether SOMMA deprived them of one or more meritorious defenses through fraud or wrongful acts unmixed with the petitioners' own negligence. We begin with petitioners' contention that they established a meritorious defense to SOMMA's claims because it is dispositive.

The petitioners rely on a number of documents—including emails and a sworn affidavit filed in the federal criminal case—as evidence that SOMMA's principals bribed Mr. Goldstein to assist them in getting and keeping SOMMA's products on the NYCDOE's menus.[5] SOMMA disputes the admissibility and probative force of these documents, but we need not address SOMMA's evidentiary challenges because even if those documents are both admissible and sufficient proof of bribery, they do not establish a meritorious defense to the claims on which SOMMA obtained relief in the final judgment.

The petitioners argue that the evidence of SOMMA's bribery scheme and SOMMA's failure to disclose that scheme to Raeford established four meritorious

---

[5] The petitioners informed us in a pre-submission letter that a jury recently convicted SOMMA's principals of federal crimes in connection with the bribery scheme. But evidence of the convictions was not before the trial court in determining the bill of review and is not in the record so it does not affect our analysis.

defenses: (1) unclean hands; (2) fraud; (3) unconscionability; and (4) illegality. The petitioners' arguments lack merit.

The petitioners first contend that because SOMMA sought equitable relief in the original proceeding, the unclean hands doctrine would provide a meritorious defense to SOMMA's claims. But the petitioners do not identify any equitable relief awarded in the final judgment to which an unclean hands defense might apply. Moreover, the party complaining of unclean hands must show that it was injured by the offending conduct. *Omohundro v. Matthews*, 341 S.W.2d 401, 410 (Tex. 1960). The petitioners fail to address—much less demonstrate—how SOMMA's bribery scheme, or its failure to disclose that scheme, caused the petitioners any injury.

With respect to fraud, the petitioners offer only the conclusory argument that "SOMMA's concealment of its secret dealings with Goldstein was calculated and intended to induce House of Raeford to manufacture the subject chicken tenders that House of Raeford would not have manufactured had it known of SOMMA's fraud." They offer no argument or authority suggesting that a commercial retailer has a duty to disclose to its suppliers how it obtained its customers. *See McConnell v. McConnell*, No. 01-10-00300-CV, 2011 WL 286145, at *6 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet.) (mem. op.) (noting that a fraud defense based on non-disclosure requires a "duty to disclose that renders the failure to do so as misleading as a positive misrepresentation"). Moreover, the petitioners point to no evidence

sufficient to show that SOMMA's failure to disclose the bribery scheme was calculated or intended to do anything other than avoid self-incrimination.

The petitioners likewise failed to establish an unconscionability defense. Under the UCC, a court may refuse to enforce a contract if it concludes as a matter of law that the contract was unconscionable at the time it was made. *See* TEX. BUS. & COM. CODE § 2.302(a). Although unconscionability lacks a precise definition, it has been described as a contract "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014) (quoting *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100, 2 Ves. Sr. 125, 155 (1751)).

Unconscionability may be either substantive or procedural. *Muzquiz v. Para Todos, Inc.*, 624 S.W.3d 263, 275 (Tex. App.—El Paso 2021). "Substantive unconscionability refers to the inherent unfairness of a particular contract or provision," whereas procedural unconscionability deals with unfairness in the "circumstances surrounding a contract's adoption." *Id.* "A contract is substantively unconscionable where its inequity shocks the conscience." *Id.* at 276. In assessing whether a contract is unconscionable, we consider: "(1) the 'entire atmosphere' in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the 'non-bargaining ability' of one party; (4) whether the contract was illegal or against public policy; and (5) whether the

contract is oppressive or unreasonable." *Id.* (quoting *Delfingen US-Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex. App.—El Paso 2013, no pet.)).

The petitioners argue, again in conclusory fashion, that SOMMA's failure to disclose its bribery scheme "tainted the negotiation process" between Raeford and SOMMA. And they again assert that had "Raeford known of the bribery scheme, it would not have entered into any supply contracts with SOMMA for its illegal scheme." But the petitioners fail to identify any aspect of the supply contract or negotiation where Raeford had an unfair disadvantage. Although Raeford now objects to SOMMA's conduct on moral grounds, the manner in which SOMMA obtained its contract with the NYCDOE had little if any relevance to the supply contract between Raeford and SOMMA. SOMMA's failure to disclose the nature of its relationship with Mr. Goldstein does not render the contract between SOMMA and Raeford substantively or procedurally unconscionable.

The petitioners also contend that evidence of SOMMA's bribery scheme establishes an illegality defense, arguing that "SOMMA's bribery of government officials directly relating to the chicken products in the Original Proceeding bars SOMMA's recovery against [the petitioners] for lost profits from the relationship SOMMA earned through bribery." The petitioners seem to loosely use the term "illegality" to mean not only illegality of contract—which is a defense to a claim for breach of an illegal contract—but also the "unlawful acts rule," that "no action may be predicated upon an admittedly unlawful act of the party asserting it." *Denson v.*

*Dallas Cnty. Credit Union*, 262 S.W.3d 846, 855 (Tex. App.—Dallas 2008, no pet.). There was nothing illegal about the supply contract between Raeford and SOMMA, so "illegality of contract" provides no defense to SOMMA's claims based on that contract. *See id.* at 852 (noting that a "contract that could have been performed in a legal manner will not be declared void, illegal, and unenforceable merely because it may have been performed in an illegal manner or because illegal acts were committed in carrying it out.").

The petitioners seem to rely more on our opinion in *Denson*, where we held that the "unlawful acts rule" barred tort claims arising out of an illegal contract. *See id.* at 855. But in 2014, the supreme court held that "the comparative responsibility scheme under Chapter 33 of the Texas Civil Practice and Remedies Code abrogated the unlawful acts doctrine." *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (citing *Dugger v. Arredondo*, 408 S.W.3d 825 (Tex. 2013)). Thus, proof of SOMMA's unlawful bribery scheme does not establish a meritorious illegality defense that would entitle the petitioners to a judgment absent any contrary evidence.

Because the petitioners failed to provide prima facie proof of a meritorious defense to SOMMA's claims, the trial court did not abuse its discretion by dismissing the bill of review petition.

CONCLUSION

To summarize our disposition:

- We reverse and render judgment that SOMMA take nothing on its negligence claims against Fieldale and Ozark;

- We reverse and render judgment that Raeford take nothing on its breach of contract claims against Fieldale and Ozark;

- We reverse and render judgment awarding Raeford the contract damages the jury found SOMMA owed on Raeford's claim; and as a result,

- We reverse the judgment denying Raeford's attorney's fees on its contract claim against SOMMA and remand so the trial court can determine the reasonable fees Raeford is entitled to on that claim.

In all other respects, we affirm the trial court's judgments.


/Cory L. Carlyle//
221231f.p05                CORY L. CARLYLE
                           JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

HOUSE OF RAEFORD FARMS, INC., OZARK MOUNTAIN POULTRY, INC. AND FIELDALE FARMS CORPORATION, Appellants

No. 05-22-01231-CV      V.

SOMMA FOOD GROUP, LLC., Appellee

On Appeal from the 14th Judicial District Court, Dallas County, Texas Trial Court Cause Nos. DC-17-00698, DC-21-17119.
Opinion delivered by Justice Carlyle. Justices Smith and Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court in cause No. DC-17-00698 is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment that awards damages to SOMMA Food Group, LLC on its negligence claims against Ozark Mountain Poultry, Inc. and Fieldale Farms Corporation, and we **RENDER** judgment that SOMMA Food Group LLC take nothing on those claims. We **REVERSE** that portion of the trial court's judgment that awards damages to House of Raeford Farms, Inc. on its claims for breach of contract against Ozark Mountain Poultry, Inc. and Fieldale Farms Corporation, and we **RENDER** judgment that House of Raeford Farms, Inc. take nothing on those claims. We **REVERSE** that portion of the trial court's judgment that denies House of Raeford, Inc. damages on its breach of contract claim against SOMMA Food Group, LLC, and we **RENDER** judgment that House of Raeford Farms, Inc. shall recover from SOMMA Food Group, LLC actual damages for breach of contract of $505,841.05, along with prejudgment interest on those damages to be determined by the trial court on remand. We **REVERSE** that portion of the trial court's judgment that denies House of Raeford Farms, Inc.'s request for attorney's fees from SOMMA Food Group, LLC, and we **RENDER** judgment that House of Raeford, Inc. shall recover from SOMMA Food Group, LLC its reasonable and necessary attorney's fees incurred in pursuing its

breach of contract claim against SOMMA Food Group, LLC, which shall be determined by the trial court on remand. In all other respects, the trial court's judgment in cause No. DC-17-00698 is **AFFIRMED**.

In accordance with this Court's opinion of this date, the judgment of the trial court in cause No. DC-21-17119 is **AFFIRMED**.

We **REMAND** this cause to the trial court for further proceedings consistent with this opinion and judgment.

It is **ORDERED** that Ozark Mountain Poultry, Inc. and Fieldale Farms Corporation recover their costs of this appeal from House of Raeford Farms, Inc. and SOMMA Food Group, LLC.

Judgment entered this 2nd day of February, 2024.